```
 1                      UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF TEXAS
 2                           HOUSTON DIVISION

 3   UNITED STATES OF AMERICA       .   CR. NO. H-14-637-4
                                    .   HOUSTON, TEXAS
 4   VS.                            .
                                    .   SEPTEMBER 15, 2017
 5   DANIELA GOZES-WAGNER           .   10:22 A.M. to 10:42 A.M.

 6

 7                  TRANSCRIPT of PRETRIAL CONFERENCE
                 BEFORE THE HONORABLE MELINDA HARMON
 8                   UNITED STATES DISTRICT JUDGE

 9

10   APPEARANCES:

11   FOR THE GOVERNMENT:            MR. MICHAEL CHU
                                    MR. JAMES D. MCALISTER
12                                  Office of the U.S. Attorney
                                    1000 Louisiana
13                                  Suite 2300
                                    Houston, Texas 77002
14

15   FOR THE DEFENDANT:             MR. THOMAS B. DUPONT II
                                    Dupont and Dupont
16                                  2500 East T.C. Jester Blvd
                                    Suite 525
17                                  Houston, Texas  77008

18
     OFFICIAL COURT REPORTER:       MS. KATHY L. METZGER
19                                  U.S. Courthouse
                                    515 Rusk
20                                  Room 8004
                                    Houston, Texas  77002
21                                  713-250-5208

22   THIS TRANSCRIPT HAS BEEN FURNISHED AT PUBLIC EXPENSE UNDER THE
     CRIMINAL JUSTICE ACT AND MAY BE USED ONLY AS AUTHORIZED BY
23   COURT ORDER.   UNAUTHORIZED REPRODUCTION WILL RESULT IN AN
     ASSESSMENT AGAINST COUNSEL FOR THE COST OF AN ORIGINAL AND ONE
24   COPY AT THE OFFICIAL RATE.   General Order 94-15, United States
     District Court, Southern District of Texas.
25   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.
```

|    |    |
|----|----|
|    | 1                 P R O C E E D I N G S |
|    | 2     *(Open court, defendant present.)* |
|    | 3        *THE COURT:* Next case, United States versus Daniela |
|    | 4 Gozes-Wagner, Criminal No. H-14-637, Defendant No. 4. |
| 10:22:38 | 5        *MR. CHU:* Good morning, Your Honor. Michael Chu and |

1                 P R O C E E D I N G S

2     *(Open court, defendant present.)*

3        *THE COURT:* Next case, United States versus Daniela

4 Gozes-Wagner, Criminal No. H-14-637, Defendant No. 4.

10:22:38    5        *MR. CHU:* Good morning, Your Honor. Michael Chu and

6 Jim McAlister for the United States.

7        *THE COURT:* Good morning.

8        *MR. DUPONT:* Good morning, Your Honor. Tom Dupont for

9 Ms. Gozes-Wagner.

10:22:47    10        *THE COURT:* Good morning.

11           We are set for trial on the 25th of September. I

12 denied the motion for a continuance yesterday, but I understand

13 you're still fighting for it, right, Mr. Dupont?

14        *MR. DUPONT:* Yes, Your Honor.

10:23:01    15        *THE COURT:* Well, tell me about it.

16        *MR. DUPONT:* All right. So after the Court denied my

17 motion, I, of course, filed, I think, it's Document 188, which

18 was a motion to reconsider my denial of the motion for

19 continuance. Initially I asked the Court -- it's a long motion

10:23:26    20 the Court read, 17 pages, I believe, but arguing that basically

21 Ms. Gozes-Wagner and I don't believe that we're going to be

22 able to get a fair and impartial jury pool here in a week -- in

23 ten days. Of course, I elaborated on that. I would like to

24 touch upon some of those ideas again this morning, but also

10:23:49    25 personally how Hurricane Harvey affected my practice, focusing

10:23:55  1  really on the two weeks that collectively we all lost dealing
          2  with the after -- immediate aftermath of Hurricane Harvey.
          3          I think what you'll hear me argue today, Your
          4  Honor, what I initially argued was the Court to consider moving
10:24:09  5  the trial to December or January or a time reasonable for the
          6  Court, given the arguments.  I've honed down that -- in the
          7  motion to reconsider, I've honed down my time request to two
          8  weeks, which would be equal to what we lost for trial
          9  preparation, in essence.  Of course, we understand that
10:24:32 10  Hurricane Harvey was a Category 4 hurricane that struck
         11  landfall August 25th, 2017.  It's on record as being the worst
         12  natural disaster in United States' history.
         13          I've put in the motion the number of people
         14  displaced, how many people lost their power, their homes, that
10:24:56 15  Houston was underwater, the economic impact we're going to see
         16  from people that have been either first truly displaced without
         17  homes and might not be able to even get a summons to come down
         18  here, or people that I classify that weren't, I guess the lucky
         19  ones, myself included, but that still have ramifications for
10:25:22 20  dealing with a storm system this size.  And it might show that
         21  the people that show up in court will be the ones that were the
         22  lucky ones.
         23          But my argument entails, Your Honor, that, of
         24  course, the better act of criminal jurisprudence is to have a
10:25:42 25  fair and impartial trial.  And I shudder to have to think that

10:25:46  1  we're going to have people that come down here that are
          2  wondering about their adjuster is going to be calling them to
          3  have to get back to home to miss that repair call or they're
          4  trying to remediate their own homes and really focusing on
10:26:03  5  things that shouldn't be involved in this building, in this
          6  courtroom.  There's no way to know that, of course.  That's why
          7  I filed the motion, but the fear is real.  The fear is real to
          8  me, and it's certainly really real to my client.
          9                  This event was a one in 1,000-year event.  I
10:26:23 10  mean, none of us likely, hopefully, would have to face
         11  something like this again.  But the reality is we still have
         12  people in the Southern District of Texas whose homes are
         13  underwater.  It's perhaps akin, given the magnitude of how this
         14  affected some of the people in the Southern District and really
10:26:43 15  in about four states, it would be akin to -- as 9-11 just
         16  happened Monday, I was thinking about folks in New York that
         17  would have to try a case after some spectacular event like
         18  this.
         19                  And I want the Court -- the Court knows that this
10:27:03 20  trial is set really within 30 days of this disaster that
         21  affected all of us.  I could see folks that have posttraumatic
         22  stress disorder.  Admittedly, as I stayed up three days
         23  watching to see if my home would flood and moving all my
         24  furniture up, I believe I experienced a mild form of that
10:27:25 25  myself, and folks have indicated that likely we all did,

10:27:28   1  because this storm event affected everybody, not just the poor
           2  people or not just rich people or a certain color.  It affected
           3  all of us.
           4              Another thing I argued, Your Honor, is displaced
10:27:41   5  aggression.  There can be an idea that people are going to come
           6  down here and they're going to want to perhaps take the anger
           7  that they have from this storm event and take it out somewhere
           8  misplaced.  This is a fraud case involving upwards of --
           9  billing upwards of $50 million.  And I would argue that it's
10:28:07  10  just too soon, and I think it's unsafe to have a motion that
          11  we're all jurors.
          12              And, of course, the issue of cars and parking,
          13  this is yet to be unseen, but even the marshals this morning
          14  told me that the garage across the street won't be serviceable
10:28:28  15  until December at the earliest.  It took me at least a half
          16  hour to find a place to park.  And this is a voluminous and
          17  complex jury trial.  We're going to have to be ushering over
          18  our exhibits, which is at least six 3-inch binders that we have
          19  that the government provided us.  But at least in terms of just
10:28:48  20  ushering the discovery in, that's -- that can pose a problem.
          21              That's my argument with regards to hoping and
          22  praying that we can have a fair cross-section of our community
          23  to come down without bias inherent because of it, not anybody's
          24  fault, not mine or Mr. Chu's or yours, but because of a natural
10:29:13  25  disaster.

```
10:29:15   1              As this affected my personal practice, Your
           2   Honor, even as early as Monday, one judge in the state system
           3   threatened to arrest another judge, because we're all now
           4   packed into one courthouse.  A subset of my practice is in the
10:29:31   5   state system, representing a majority of felony indigent
           6   accused people.  But I don't know where I'm going to court each
           7   day right now really until the morning or the day before.
           8   They're having morning and afternoon dockets.  I do believe my
           9   two trials are going to be rescheduled, because they're -- the
10:29:52  10   state system doesn't even believe they're going to be able to
          11   have jury summonses remailed in these things until perhaps
          12   early November, and I think that's optimistic.
          13              But right now we're just not yet healed from
          14   Harvey.  So I would like to just argue a few things, just to
10:30:16  15   bring up to the Court, which weren't in the motion.  During
          16   this time period I have been in discussion with Mr. Chu.  We
          17   have been talking.  We've not sat on -- and I've not sat on my
          18   hands and done nothing.  I've pushed the ball forward.  I've
          19   engaged other lawyers to help me.  They're not here today, but
10:30:36  20   they're doing some discovery items that I've asked them to do,
          21   really since I got the Court's ruling the other day.
          22              I will share to the Court that if you -- Mr. Chu
          23   argued in his motion in opposition to my mine, that, yes, this
          24   case has been continued several times, but it was for a number
10:30:57  25   of reasons.  One of the defendants in the case, you may recall,
```

10:31:01 1 hung himself after he got bail and then was denied bail, and
2 there are other things that have occurred in this case to allow
3 reasons for the trial to be continued. But notably, Your
4 Honor, on the last motion filed, which is on May 23rd, was the
10:31:23 5 government's motion, which I was unopposed, because they had an
6 issue with an essential witness. We didn't oppose that at all.
7 So I don't believe I personally filed a motion for continuance
8 unless it was joined initially in the beginning when all the
9 other lawyers were present in the case.
10:31:46 10         In 18 years, Your Honor, I've never been found to
11 be ineffective and I'm pretty proud of that, but this situation
12 has caused stress. It's causing anxiety for me, not just this
13 case. I've had the time. I'm just about there. But there's
14 outside stresses. And losing two weeks of critical trial prep
10:32:06 15 30 days before a jury trial, when most lawyers really kind of
16 are sharping their knives and doing those things has caused
17 stress upon me.
18         All that said, how do we proceed? At the end of
19 the day I would like the two weeks back I lost, and I offer for
10:32:25 20 the Court to consider a mid-October setting, which is what I
21 pled in the motion to reconsider, or if my fears are valid, I
22 would agree to pick a jury on the 25th and let's just see,
23 because, you know, I know the Court allows time to voir dire.
24 I've tried two in here with you. But now I'm going to have to
10:32:54 25 introduce questions with regards to how Hurricane Harvey has

10:32:57   1  affected them in their ability to be fair and impartial and
           2  could they serve without violating their conscious and missing
           3  phone calls from insurance adjusters and these things.  You
           4  know, that would cut into what I would otherwise inquire about
10:33:11   5  in jury selection.  Perhaps seeing if my concerns are valid, we
           6  could have a test run.  If we can pick a jury, we can tell them
           7  you can come back in two weeks and we'll start up then, which
           8  would give me two additional weeks that I lost to continue to
           9  work with the government, which I plan to do.  If not, if the
10:33:34  10  panel gets busted somehow, because, first, we don't know how
          11  many are going to show up and then, secondly, if they are, in
          12  fact, somehow bothered by -- they're not going to be able to
          13  give the time it needs -- which this case is estimated, by the
          14  government, to take about a week and it could go a little bit
10:33:55  15  longer.  See, there's going to be some defensive issues raised,
          16  and I think a week is just optimistic.  I personally think it's
          17  going to take eight to ten days, but that's my personal belief.
          18                Counsel and I have talked about if the Court does
          19  deny the motion, perhaps between us lawyers, with the Court's
10:34:21  20  approval, we could get a triplicate form questionnaire to
          21  provide to the prospective venire to -- that is strictly Harvey
          22  related.  We could formulate it where it's fair to everybody
          23  here, have them fill it out, which perhaps they won't be
          24  embarrassed about their questions and answers.  We could
10:34:43  25  critique those responses, perhaps have individual voir dire.

```
10:34:46    1  It's unusual, I get it, but I think this situation is unusual.
            2              We could have that done, if the Court -- my fear
            3  is losing time on Harvey when I have other things to talk about
            4  in a 50-million-dollar health care fraud conspiracy.  And
10:35:04    5  there's two counts.
            6              Lastly, Your Honor, it's kind of like, I find it
            7  akin to if the Court had a trial setting for me at a date
            8  certain and then one day called my office and said, Mr. Dupont,
            9  we're moving your trial up two weeks, and there's nothing you
10:35:22   10  can really do about it.  And I just lose two weeks of trial
           11  prep.  And so I'm making an argument that that's -- the
           12  situation here is similar to that.
           13              If the Court doesn't allow the reset, we would
           14  ask for some special consideration so late-minute discovery can
10:35:45   15  get done, and the government has already addressed that with
           16  me, because, you know, earlier this month I had scheduled to
           17  give my exhibits and discovery to Mr. Chu.  So perhaps we could
           18  at least have understandings, which I believe we have, that the
           19  Court be sensitive to -- and my side is not voluminous, but
10:36:04   20  there are bank records and things that we have to get in shape
           21  to give to you and the jury.
           22              So I would ask if the Court decides to deny the
           23  two-week request, based on the foregoing, we might even have
           24  another pretrial conference just with the Court and the lawyers
10:36:21   25  so we could address and fine-tune these things.  That's about
```

10:36:25  1  it, Your Honor.
          2           *THE COURT:* Okay. Mr. Chu?
          3           *MR. CHU:* Your Honor, as the Court can tell, the
          4  parties have worked closely together for the past -- not even
10:36:31  5  just the past few weeks but also the past few months, maybe
          6  even the past couple -- year, year and a half. I can tell from
          7  the completeness of Mr. Dupont's presentation, he's given this
          8  a lot of thought and the parties have, again, worked together
          9  to try to find a fair compromise for this and other things.
10:36:47 10           The United States is also very sympathetic to
         11  this idea that Harvey has affected our community, but when it
         12  comes right down to it, you know, while the United States also
         13  wants a fair and impartial panel for this jury, we feel that
         14  these kind of issues can be addressed in the same manner that
10:37:06 15  any other biases or questions can be addressed with any panel,
         16  which is to have the parties question the panel and just sense
         17  what sort of biases or issues may come up.
         18           I think the idea of a questionnaire is a great
         19  idea. The parties will work together as it has in the past to
10:37:23 20  just try to come up with something that's fair and will reveal
         21  what sort of issues will come up with this panel. But when it
         22  comes right down to it, these issues can be addressed in other
         23  ways other than continuing this trial.
         24           From our perspective, we have a number of young
10:37:38 25  witnesses who did not receive a lot of money from this. These

10:37:41   1  are mostly the young Hispanic women that Daniela Wagner hired
           2  to work for her in these offices.  And every time we continue
           3  this trial, you know, they have to arrange for child care.
           4  They have to arrange for transportation.  They have to arrange
10:37:55   5  for work absences.  And it's an enormous difficulty in their
           6  lives.  And we've continued this trial several times and not
           7  always because of the defendant, but the effect is that we're
           8  continuing to impose on their lives.  And for those reasons, we
           9  ask that the trial just go forward as we scheduled it.  I mean,
10:38:13  10  they planned for it for several months now.  What happened with
          11  Harvey was unfortunate, but if they're willing to make the
          12  sacrifice to show up, if Mr. McAlister here was here out of his
          13  house for two weeks is going to show up for the trial, I
          14  respectfully ask that we continue with our trial date and keep
10:38:28  15  the current trial date.
          16          *THE COURT:*  Yes.  I understand what you're saying,
          17  Mr. Dupont, but I really -- it sounds to me from what you've
          18  said, that you are just about ready to go to trial.  You've
          19  got -- you have done your trial prep.  A few more things that
10:38:46  20  you need to get done, but certainly ten days is plenty of time
          21  to do those things.  I really do believe that this
          22  questionnaire thing is a great idea, and I think that would be
          23  a way of addressing the issues that you've brought up.  I know
          24  that Judge Gilmore tried a jury trial earlier this week.  I
10:39:09  25  don't know if it was a criminal trial or a civil trial, but, I

10:39:12  1  mean, she did get a jury picked and they went to trial.  So, I
          2  mean, I don't think that Harvey is going to create such an
          3  impact on the criminal justice system that we can't get a jury.
          4  I mean, I think with some careful questioning, I think we can
10:39:29  5  get a fair and impartial jury.  So that to me, that's the most
          6  important thing.
          7              And so I'm going to deny your motion.  I'm going
          8  to stay with my original denial and ask y'all to put your heads
          9  together to come up with a questionnaire that you both agree
10:39:47 10  to.  And I know that Ms. Hawkins has -- the case manager has
         11  mentioned to me that we probably need more jurors than we -- or
         12  more venire people than we would ordinarily have.  So we'll
         13  have more people, because of the possibilities to Harvey
         14  having affected their lives that much.
10:40:11 15              And so I would like to have, if you can, have
         16  your questionnaire to me, say, Wednesday of next week.  And
         17  I'll look it over and make any changes that I think need to be
         18  made and then we'll get Ms. Hawkins to prepare the
         19  questionnaires and so then we'll have to -- obviously have to
10:40:36 20  spend extra time on the voir dire because of the
         21  questionnaires, which y'all will want to look at what they have
         22  to say.  So anyway, we'll, I guess -- well, I'll figure it out.
         23  We'll figure out what we're going to do, and so we'll see you
         24  all back at 9:00 o'clock on the 25th.
10:40:58 25              *MR. DUPONT:*  Just one scheduling question.

10:40:59  1          *THE COURT:*  Yes.
          2          *MR. DUPONT:*  Okay.  So would you just want to pick the
          3  jury that Monday and then we would start opening and evidence
          4  the next day?
10:41:07  5          *THE COURT:*  Yeah, I think --
          6          *MR. CHU:*  Actually, Your Honor, if I could be heard on
          7  that.
          8          *THE COURT:*  Sure.
          9          *MR. CHU:*  Pushing back the trial another week after we
10:41:13 10  pick the jury will still affect the government's witnesses in
         11  the same way that an original continuance would.
         12          *THE COURT:*  Yeah, I'm not going to delay the -- we're
         13  going to take longer with the jury selection than we normally
         14  would, but we're not going to delay the trial.  I mean, I'm
10:41:26 15  thinking -- usually we can pick the jury -- in a normal case,
         16  we can pick the jury in the morning and start the trial in the
         17  afternoon.  However, I really think probably what we'll have to
         18  do is have the veniremen come in, fill out the extra -- their
         19  normal -- they've already filled out their normal
10:41:44 20  questionnaire, because that's done before they even come in.
         21  But I don't think we have time to send this questionnaire to
         22  them like I've done in the past, send the special questionnaire
         23  to them and have them fill it out and bring it in.  But I would
         24  think we could probably have them come in in the morning, fill
10:42:05 25  out the questionnaire, get that to us by, you know, sometime

```
10:42:08   1   midmorning, because they come in at 8:00 o'clock, I think, and
           2   you all get to look it over for a couple of hours -- look them
           3   over for a couple of hours, make any agreements you might have
           4   on people that you don't want to bother with, we'll let them
10:42:25   5   go, and then the rest of the people come in and you can
           6   question them face-to-face --
           7           MR. CHU:  Thank you, Your Honor.
           8           THE COURT:  -- in the afternoon, I mean, and that way
           9   we'll get the jury in the afternoon and we'll start the trial
10:42:36  10   on Tuesday.
          11           MR. CHU:  Thank you, Your Honor.
          12           THE COURT:  Okay?  All right.  Thank y'all very much.
          13           MR. CHU:  Thank you.
          14           THE COURT:  Look forward to receiving that
10:42:44  15   questionnaire.
          16           MR. CHU:  May the parties be excused, Your Honor?
          17           THE COURT:  Yes, you may.  Thank you.
          18       (Concluded at 10:42 a.m)
          19                              * * *
          20   I certify that the foregoing is a correct transcript from the
          21   record of proceedings in the above-entitled cause, to the best
          22   of my ability.
          23
          24   /s/ Kathy L. Metzger                      4-21-2019
               Kathy L. Metzger                          Date
          25   Official Court Reporter
```